Our last case this morning is Cleven v. Soglin. Ms. Goldman Good morning. May it please the Court, my name is Lisa Goldman, and I represent the appellant Gary Cleven. Justice delayed is justice denied, and government entities must be bound by the statutes, their concessions, and orders that govern retirement benefit determinations. The correct standard of review to apply to a district court summary judgment decision involving constitutional questions is de novo. This Court should reverse the district court's grant of summary judgment in favor of the city, and instead grant Mr. Cleven's partial summary judgment motion on liability for three reasons. First, state law long ago deemed Cleven's right to enrollment in the Wisconsin retirement system and to government entity to provide a pre-deprivation hearing before taking property where quick action was not required, where a pre-deprivation hearing is feasible, and where the tortious loss of property is not due to a random and unauthorized act by a state employee. Third, post-deprivation remedies are inadequate to compensate Cleven for the years he lost in the enjoyment of retirement. First, Wisconsin statutes chapter 40 in longstanding Wisconsin case law unambiguously details Cleven's retirement benefits as a constitutionally protected property right. The city's argument on appeal that Cleven did not have a property right is frivolous. The Wisconsin Supreme Court decided in 1996, 1997, and 2001 that employees and retirees had a protected property interest in state retirement funds. Specifically, the Wisconsin This is not that same question. This is a question about whether he was properly classified as an employee or as an independent contractor, and that's been resolved by the state courts. And what the current fight about, as I understand it, has to do with when during the course of that multi-year litigation over the classification decision, he had a vested property right to back benefits, and in particular, this issue of employee contributions. Who was going to be responsible for those once it was determined that he had been misclassified all this time along with the other stagehands? Your Honor, you raised two questions. The first question is what process was Cleven due, and Cleven was due the process as detailed by statute and regulation, that the city must immediately report his hours and earnings when it conceded at the hearing in 2011 that he was due credit back to January 1, 1983. Certainly, the city was obligated to report his hours and earnings when the board ordered it to do so in 2013, and certainly it was also required to report his hours and earnings when Judge Anderson ordered him to do it in 2016. The city refused to report his hours and earnings until Mr. Cleven filed a motion for contempt in 2016. The second question you asked is with regard to the employee's share versus the employer's share of the benefits determination. This case isn't about who pays the employee's share of the benefits determination. The statute has already resolved that, and Judge Lanford has already resolved that. The statute says specifically 40.22 sub 3 sub b, that once the city realized he should have been reported, it had an obligation to report his hours and earnings immediately. If the city thought that Cleven should have to pay the employee's share, the city could utilize WSSTAT's 40.06 sub 5, which allows the city to recoup the employee's share from the employee. But none of those statutes or rules allow the city to refuse to report his hours and earnings, and he couldn't retire until they reported his hours and earnings because he didn't have to collect an annuity. The counsel, between the litigation that he engaged in beforehand and the mandamus that was available to him afterwards, it seems like he had adequate process and really the complaint is that the process didn't yield a result. As you say, justice delayed, justice denied, that the process didn't deliver the result quickly enough, but it wasn't a lack of process, right? It was the city, what you're really complaining about is the city's not acting promptly on the order. No, actually, Judge Barrett, that's not correct, which brings me to my third point, that post-deprivation remedies are inadequate to compensate Cleven for the roughly five years of retirement that he lost. Technically, Cleven's trust fund appeal was his post-deprivation remedy that he followed to obtain his right to retirement benefits. He filed an appeal, he had a hearing, he got a decision, and he got a final decision all by 2013. But the city didn't follow the decision, and the city didn't appeal the decision. The city's assertion that the law provides Cleven could have a post-post-deprivation hearing, even though no procedure has been articulated by the city, and no law supports such an interpretation, falls short. Well, but your client appealed the decision of the ETF board. Actually, our client only appealed to the circuit court, and the circuit court said it was without jurisdiction because it was not filed timely. Our client did not continually appeal then, but more importantly, the city did not appeal the board order. The board order remained standing, that it had to report him, and that order issued in 2013, but it flagrantly refused to report him to the Wisconsin retirement system. And its assertion that it had a right to withhold reporting because it didn't want to pay the employee's share falls short, because the statute anticipated such a situation. If we look at WSSTATS 40.06 sub 5, the statute prescribes that if the employer believes it's entitled to recoup its payment from the employee, it must do so independently. But reporting the hours wouldn't have given him immediate eligibility when he says he wanted it, because he didn't otherwise qualify. He hadn't made any employee contributions. The system requires for eligibility mandatory employment contributions, or employee contributions. It's not exactly correct. The way the system works is that they report his hours and earnings, and they're obligated to pay into the system. The board, the statute... No, but in terms of relief here, he wouldn't have been able to retire at the earlier time that he says he wanted to retire, or would have retired if the reporting requirement had been complied with, because he wasn't then in compliance, or he wasn't eligible. He met the eligibility requirements in 2008. He could have retired... Because he was paying in as of 2008, since he paid all the back contributions to 1983? The way the statute works is that once the city reports his hours and earnings, if the city does not pay the employer and the employee's share, the trust fund has a right to recoup that money from state aides immediately, which means if they had reported his hours and earnings, they would have been forced to pay his employer and employee's share into the plan, and he would have been eligible to retire immediately. The whole reason the city refused to report is because it didn't want to pay, and that's a violation of due process, because the order required them to report him. They knew that was going to be the result of that, and they flagrantly refused to follow the court order. I see that I have... What's the status of the state litigation on the required employee contributions? Judge Lanford has already ruled that the city is required to pay both the employer and the employee's share for all of the state gents that are involved. I would like to reserve my two minutes for rebuttal, but I can... Well, is that on appeal? What's the status of it? The city has appealed that, and the record... The briefing hasn't begun before the Court of Appeals, but it's on appeal. Okay. Thank you. Mr. Reginato. May it please the Court. My name is Mateo Reginato, and I represent the City of Madison in this appeal. It is undisputed that Mr. Clevin is currently receiving every single penny of the retirement benefits to which he is legally entitled to receive. The record also shows that Mr. Clevin was not deprived of any legally protected property right, that Mr. Clevin was afforded due process, and that any injury that Mr. Clevin sustained was caused by his own delay and his own failure to pursue available state and administrative remedies, a delay which started in the early 1980s, which was around the time that I was born, and which lasted for 30 years. With respect to any protectable property right associated with the initial enrollment in the WRS, that property right was created in December of 2009 through a negotiated labor agreement with Mr. Clevin's union and the City of Madison. The city complied with that labor agreement and enrolled Mr. Clevin in the WRS at around that time. There was absolutely no protectable property right to have Mr. Clevin enrolled at any time before then, because the city made an initial determination that Mr. Clevin was an independent contractor rather than a city employee pursuant to Wisconsin Statute 40.061D. And because Clevin did not challenge that determination, which he could have done under Wisconsin Statute 40.061E, which serves as a procedural mechanism allowing individuals to challenge these types of determinations through administrative review through a filing to the ETF. Mr. Clevin knew that he was an independent contractor in the 1980s, continued working as an independent contractor for 30 years, and did not seek review of that independent contractor determination for over 30 years. With respect to any protectable property right associated with backdating his hours to the WRS, there was no definite property right to do that until April 2016 when the Dane County Circuit Court, under writ of mandamus, ordered the city to immediately backdate those hours with all reasonable dispatch. The city complied with that, and after evaluating its rights to appeal that decision, backdated the hours in June of 2016. Council argues that the ETF's March 11, 2013 decision created some type of property right to have Mr. Clevin's hours immediately backdated, and that is certainly not the case for various reasons, your honors. First, the ETF's decision did not specify, let alone require, any backdating to be done within a certain period of time, let alone require the city to take actions to backdate Mr. Clevin's or the other stage hand's ETF, or the other stage hand's hours, prior to judicial review of the ETF's decision. As this court indicated in Schroeder v. Chicago, deadlines for actions define what process and property rights are. Second, the city did not appeal that ETF decision, but as the court pointed out, Mr. Clevin and various other stage hands attempted to clarify the ETF's finding by appealing that decision immediately after that decision was rendered. Any reversal, any modification to the ETF's decision would have materially impacted the years that the city was required to backdate, not only for Clevin, but for the various other stage hands. And it would have also impacted the amount of funds needed to be paid by the city. So when did this, an arguable property right, in having the hours backdated arise? Your honor, the property right to having the hours backdated arose in June, on June 6, 2016, or I apologize, in April of 2016 when the Dane County Circuit Court ordered the city to report Clevin's hours with all reasonable dispatch. And that was pursuant to a writ of mendamus that was pursued by the plaintiff in this case. And that was not just him, that was the other stage hands too, or was that just him? That was just him, your honor. Okay. Finally, or in addition, the city would have faced considerable practical, fiscal, and financial, and administrative burdens if it was required to later go back and modify the payment amounts or the backdated dates, especially when considering the numerous number of stage hands that were involved in the ETF decision and appeal. Finally, the city believed that it could not backdate Clevin's hours prior to his paying his share of the backdated contribution because of Wisconsin Statute 40.065, which indicates that the employer shall collect from the employee all of the amounts which the employee would have paid when the amounts were due, plus interest. And Wisconsin Statute 40.051B, which prohibited the city from paying contributions on behalf of its employees. The city's delay in this case was reasonable considering the circumstances and considering the uncertainties in the appeals that were in process. Nor was Clevin deprived of a property right to begin receiving annuity payments or to retire in January of 2012, which he now claims that he intended to do so. Clevin did not obtain a protected property right to begin receiving an annuity benefit until December 31st of 2016, which is the date that he actually retired. Finally, Wisconsin Statute 40.21 indicates that an individual does not have the right to receive an annuity benefit until he attains the age of 55, until he submits an application for the retirement annuity, and until he's separated from his employment. In this case, the city did nothing to prevent Mr. Clevin from retiring and did nothing to prevent Mr. Clevin from submitting an application for the retirement annuity. It was Mr. Clevin's choice not to do so. When Mr. Clevin finally did so in December 31st of 2016, he began receiving annuity payments within 30 days, which is what is required by the statute. The fact that Clevin may not have received all of the retirement benefits to which he claims that he was legally entitled to receive prior to that time doesn't change the fact that he didn't retire and that he didn't satisfy the requirements under 40.231. In fact, this very similar case was addressed by the district court in New York in CINO versus New York Teachers Retirement System, where a 14th amendment claim was dismissed, even though the city's conduct, it was argued that the city's conduct would have effectively deprived an individual from being able to retire. The court indicated that the individual still could have retired and the individual just would not have been able to receive the benefits that she thought that she was entitled to receive. In addition, and perhaps even more importantly, Clevin received ample process in this case. He had administrative and state remedies available for over 30 years. It was his decision not to avail himself of those remedies. With respect to the initial enrollment into the WRS, the city made the independent contractor determination in the 1980s, and Clevin knew that he was not enrolled in the WRS. Clevin knew that he was an independent contractor and that he was not receiving or paying into the benefits fund. Remedies existed to challenge that independent contractor determination under 40.061e, which allowed Mr. Clevin to seek administrative remedies and review through the ETF. He decided not to seek a review to the ETF for over 30 years. With respect to backdating Mr. Clevin's hours all the way back to the 1980s, Clevin had noticed that the city would not backdate his hours or earnings until they collected the backdated contribution. This is indicated under Wisconsin statutes 40.065 and 40.051b, and it was also discussed during labor negotiations with Mr. Clevin in 2007. During those labor negotiations, there was no agreement for the city to go back in and pay the employee portion of the backdated contribution. Clevin also had the opportunity to be heard for 30 years, and that's all that's required under the 14th amendment, your honors. He had the ability to seek administrative review, as we discussed, to the ETF under 40.061e all the way back to the 1980s. He didn't do so until July 26, 2010, just a year and a half before the date that he's now claiming he wished to retire, which is January 2012. Taking earlier action by Mr. Clevin would have allowed Mr. Clevin to seek any kind of judicial review of the ETF findings long before January of 2012, including seeking review of any issues that are related to backdating, which Clevin is, which is still an issue now in Gersbach versus City of Madison. To address some points made by opposing counsel, the court in Gersbach did not indicate that the city was required to pay the employee backdated portions under the the statute did not require the same and used its equitable powers in order to compel the city to do so. The city appealed that, and that appeal is still ongoing. You're going to have to wrap up. Your time has expired. Yes, your honor. For these reasons, I respectfully ask that the court affirm the district court's dismissal of the procedural due process claim. Thank you. Thank you. So, your honor, 40.22 sub 3 sub b and chapter 304 of the administrative manual governing retirement benefits state that the employer must report an employee's hours and earnings when they realize that they were entitled to benefits. So the city came to the hearing based on Clevin's appeal in 2011. They came to that hearing and they conceded that he should be reported back to January 1st, 1983, but they didn't follow the statute to report him. If you look at docket 12-1 page 16, the hearing examiner in the 2013 decision stated that the city came to the hearing and conceded. So you're claiming a property interest in the reporting. Once he can't retire until the reporting is made. So it would have been that the defense has argued that that he never made an application. Well, an application would be futile because the hours and earnings aren't there in the system for him to receive the annuity that he's entitled to. If he had made the application in 2011, he would have only been given $14,000 because that's what he has earned since they reported him in 2009. So that's a red herring. Moreover, just like the coming to Zimmerman v. Burge and Logan v. Zimmerman and this court's decision in LaValle and this court's decision in Schrader, that when a pre-deprivation hearing can occur, the city has an obligation to provide one. The city is coming to you and saying it didn't have to pay the employee's share and therefore it didn't have to report. But the statute says if it doesn't want to pay the employee's share, it can recoup it from the employee, but it cannot delay reporting. So in conclusion, your honors, Mr. Clevin respectfully requests that you reverse the district court's grant of summary judgment and certainly if the statutory interpretations are an issue, that's a factual question which requires reversal of the summary judgment decision and urges you to grant his motion for partial summary judgment on liability as it's undisputed that the city refused to report his hours and earnings after it conceded in 2011 that he was the statute required him to do so and after the board order in 2013 required them to do so. Thank you, counsel. Our thanks to both counsel. The case is taken under advisement and that concludes the calendar for today. The court is in recess. you